THE PEOPLE *ex rel.* HARRY R. CONDON, County Treasurer, Plaintiff-Appellant, *v.* COMMONWEALTH EDISON COMPANY, Defendant-Appellee.

Third District   No. 78-62

Opinion filed September 20, 1978.

Bruce Black, State's Attorney, of Pekin (Robert L. Metzler, Assistant State's Attorney, of counsel), for appellant.

Thomas M. Atherton, of Frings, Bagley & Atherton, of Pekin, for appellee.

Mr. PRESIDING JUSTICE BARRY delivered the opinion of the court:

This appeal concerns tax objection proceedings in the Circuit Court of Tazewell County. The plaintiff-appellant, the People of the State of Illinois *ex rel.* Harry R. Condon, county treasurer and ex-officio collector of taxes of Tazewell County, Illinois, filed an application for judgment for delinquent taxes for the year 1974 against the defendant-appellee, Commonwealth Edison Company. The defendant filed an objection as to the method of levy by School District No. 108 for its working cash fund. The plaintiff has appealed from the judgment order of the trial court sustaining defendant's tax objection.

The Board of Education of School District No. 108 in Tazewell County made a levy for working cash purposes for the year 1974 in the amount of $117,500, for which a rate of $0.005 on $100 of assessed valuation was extended for such purposes. School District No. 108 in making the levy for working cash purposes did not levy by separate resolution but rather included the levy with all of its other levies to provide funds for the operation of the school district. The levy, for working cash purposes, was made timely and, in all other respects, was properly made.

The issue presented for determination is whether the tax levy for a working cash fund, as provided for in section 20—3 of the School Code (Ill. Rev. Stat. 1975, ch. 122, par. 20—3), must be levied by a separate resolution, or can it be levied along with the educational and building taxes under section 17—11 of the School Code. Ill. Rev. Stat. 1975, ch. 122, par. 17—11.

The authority for levying a working cash fund for the year in question was only in section 20—3 of the School Code which provided in pertinent part:

> "For the purpose of providing moneys for a working cash fund, the school board of any such school district *may* also levy annually upon all the taxable property of their district a tax, known as the 'working cash fund tax,' not to exceed .05% of value, as equalized or assessed by the Department of Local Government Affairs. Provided, that: (1) no such tax *shall* be levied if bonds are issued in amount or amounts equal in the aggregate to the limitation set forth in Section 20—2 for the creation of a working cash fund; (2)

no such tax *shall* be levied and extended if the amount of the tax so to be extended will increase the working cash fund to a total amount exceeding 75% of the taxes last extended for educational purposes of the district. The collection of the tax *shall* not be anticipated by the issuance of any warrants drawn against it. The tax *shall* be levied and collected, except as otherwise provided in this Section, in like manner as the general taxes of the district, and *shall* be in addition to the maximum of all other taxes, either educational or operations, building and maintenance fund taxes, now or hereafter to be levied for school purposes. It *may* be levied by separate resolution by the last Tuesday in September in each year." (Emphasis added.) Ill. Rev. Stat. 1975, ch. 122, par. 20—3.

School District No. 108 levied the tax for their working cash fund pursuant to the above quoted statute without the benefit of a separate resolution. The certificate of levy used was that form provided by section 17—11 of the School Code which section otherwise provides in part: "The school board of each district shall ascertain, as near as practicable, annually, how much money must be raised by special tax for transportation purposes if any and for educational and for operations, building and maintenance purposes for the next ensuing year." (Ill. Rev. Stat. 1975, ch. 122, par. 17—11.) The same section then sets out the only form of the certificate provided in the statute:

"CERTIFICATE OF TAX LEVY

We hereby certify that we require the sum of _____ dollars, to be levied as a special tax for transportation purposes and the sum of _____ dollars to be levied as a special tax for educational purposes, and the sum of _____ dollars to be levied as a special tax for operations, buildings and maintenance purposes, on the equalized assessed value of the taxable property of our district, for the year 19___.

Signed this ___ day of _____, 19___.

A _____ B _____, President

C _____ D _____, Clerk (Secretary)

Dist. No. _____, _____ County."

(Ill. Rev. Stat. 1975, ch. 122, par. 17—11.)

The language of that form was obviously adjusted to include the working cash fund tax.

The argument of the plaintiff county treasurer is that it is not mandatory under the language of section 20—3 of the School Code that a school district pass a separate resolution to levy a working cash tax. We agree with this argument and believe that the judgment order of the trial court sustaining the defendant's tax objection should be reversed.

■■ The defendant has cited to us numerous cases involving statutory

construction in the use of the words "may" and "shall" and generally rules of statutory construction. We are persuaded that in the absence of a statutory definition indicating a different legislative intention, we should presume that the words used in the statute have their ordinary and popularly understood meanings. The statute involved here (Ill. Rev. Stat. 1975, ch. 122, par. 20—3) appears to be unambiguous on its face, and we find it unnecessary to resort to the various rules of statutory construction. Giving the word "may", as used in the applicable statute, its ordinary and popularly understood meaning of being permissive rather than mandatory resolves the one issue raised.

■■ We believe the statute was fully complied with here by including the levy for the working cash fund together with the regular school tax levy which was filed pursuant to section 17—11 of the School Code rather than by a separate resolution as allowed by the use of the permissive "may" in section 20—3 of the School Code. In our view the clear import of the statute (Ill. Rev. Stat. 1975, ch. 122, par. 20—3) is and has been a grant of power by the legislature to the various school districts to levy an additional tax for a working cash fund if they so desire. If a school district so elects to tax for a working cash fund it may do so in a separate resolution provided it is made by the last Tuesday in September. As heretofore indicated the use of the permissive "may" when read in the context of the whole of section 20—3 of the School Code clearly mandates its ordinary meaning throughout. Combining the certificate of levy for the working cash fund with the normal regular certificate of levy for other school district taxes does not defeat the purpose or policy of the School Code requiring notice to the public. The notice to the public is essentially the same whether the working cash fund is levied by a separate resolution or by adding it to the regular certificate of levy pursuant to section 17—11 of the School Code. We perceive that no useful purpose could be effectuated by requiring a tax for a working cash fund to be levied exclusively by a separate resolution.

The defendant points out that the legislature recently changed sections 17—11 and 20—3 of the School Code. (Public Act 80—619, Ill. Rev. Stat. 1977, ch. 122, pars. 17—11 and 20—3.) The amendments to those paragraphs provide expressly for the working cash fund to be levied by a separate resolution or by inclusion in the certificate of levy for other school district taxes pursuant to section 17—11 of the School Code. It is argued that when a statute has not received judicial construction and is subsequently amended to add a new provision, it is an indication of the absence of the prior existence by implication of the added material. (*Western National Bank v. Village of Kildeer* (1960), 19 Ill. 2d 342, 167 N.E.2d 169; *Creel v. Industrial Com.* (1973), 54 Ill. 2d 580, 301 N.E.2d 275.) While we agree with this argument as a general rule of statutory

construction, we do not find it necessary to resort to the application of such rules of construction where the statute on its face is clear and unambiguous. The legislative changes in both relevant sections of the School Code, made after the facts in the present case arose and reached the state of litigation, are consistent with the clear and popularly understood meaning which we give to the words used in the statute in deciding this case. The fact that a statute is made more specific does not require a court of law to construe the meaning of the amendment of the statute to indicate a change of legislative intent where such is not evidenced by the plainly understood meaning of the statute both before and after the amendment.

For the reasons stated the judgment of the Circuit Court of Tazewell County is reversed.

Reversed.

STOUDER and SCOTT, JJ., concur.