JENSEN DISPOSAL COMPANY, Plaintiff-Appellant, v. THE TOWN OF WARREN, Defendant-Appellee.

Second District   No. 2—90—1282

Opinion filed August 30, 1991.

Fred Weiszmann, of Northbrook, for appellant.

Rudolph F. Magna, Jr., of Gurnee, for appellee.

JUSTICE BOWMAN delivered the opinion of the court:

Plaintiff, Jensen Disposal Company (Jensen), appeals from the denial of Jensen's motion for summary judgment and from the subsequent final judgment order entered in favor of defendant, the Town of Warren, a township in Lake County, Illinois (Township). Jensen presents the following issues for our review: (1) whether the trial court erred in finding that the Township was not barred from exercising the powers of the Township Refuse Collection and Disposal Act (Act) (Ill. Rev. Stat. 1989, ch. 139, par. 331 *et seq.*); (2) whether the trial court erred in finding that a contract between the Township and Waste Management of Illinois, Inc., was a valid exercise of the powers granted under the Township Refuse Collection and Disposal Act; (3) whether the trial court erred in finding that the contract between the Township and Waste Management was not void for lack of consideration; and (4) whether the trial court erred in finding that the contract was void for lack of mutuality of obli-

gation. The Township, in addition to responding to Jensen's arguments on appeal, further contends that Jensen lacks standing to challenge the contract between the Township and Waste Management. For the reasons that follow, we affirm in part, reverse in part and remand with directions.

For a number of years prior to 1990, Jensen, a corporation engaged in the business of collecting and disposing of garbage and other refuse, conducted its business in and about Warren Township. By early 1990, Jensen had approximately 6,000 residential garbage service customers in Warren Township. By a letter dated January 24, 1990, the Township, along with the Village of Gurnee, solicited bids for a contract to provide garbage disposal, landscape waste disposal, and curbside recycling services. Attached to the letter was a proposed agreement which provided, *inter alia*, that the Township would have to pass a referendum in order to participate in the contract; that there would be approximately 10,000 Township residential units served; that collections were to be from each residence, townhouse, duplex or condominium up to eight units; that the contractor would be operating as an independent contractor and not as an agent of the Township; that the contractor would remove landscape waste from all individually maintained residences; that Township residents would be paying for their landscape waste collection; that the billing rate for garbage collection service would be as set forth in the contract; and that the contractor would bill and collect its fees from the Township residents.

On March 6, 1990, Jensen brought a declaratory judgment action (Ill. Rev. Stat. 1989, ch. 110, par. 2—701) against the Township. The complaint alleged that the proposed contract was not authorized or permitted under the Act (Ill. Rev. Stat. 1989, ch. 139, par. 331 *et seq.*) or any other provision of the Township Law of 1874 (Ill. Rev. Stat. 1989, ch. 139, par. 1 *et seq.*), and that any attempt to exercise the powers conferred by the Act would be *ultra vires* the powers of the Township and invalid. On March 9, 1990, Jensen filed a motion for a preliminary injunction asking the court to enjoin the Township from submitting to the voters of the unincorporated areas of the Township a referendum proposition, scheduled for March 20, 1990, to authorize the Township to exercise the powers conferred by the Act. The trial court denied the motion on March 12, 1990.

Subsequently, the Township conducted the March 20, 1990, primary election at which the referendum was passed by a majority vote of 1,580 to 924, thus authorizing the Township to exercise the powers conferred under the Act. At some point thereafter, the Township and Waste Management entered into a "Contract For Pick-Up And Disposal Of Gar-

bage Recycling And Landscape Waste Removal." The agreement between the Township and Waste Management contained generally the same provisions as those set forth in the proposed contract referenced above.

On May 31, 1990, Jensen filed a motion for summary judgment alleging that the Township was not authorized or permitted to enter into the contract with Waste Management or to exercise the powers conferred by the Act. The trial court denied Jensen's motion on June 18, 1990, concluding that the Township was not barred from exercising the powers of the Act. Jensen filed a supplementary motion for summary judgment on June 21, 1990, alleging that the agreement was not a valid contract at law in that it lacked mutuality of obligation; that the contract was not a valid exercise of the powers set forth in the Act; and that the agreement was merely a device to license the garbage business, which power was not conferred by the Act. On August 9, 1990, the trial court also denied Jensen's supplementary motion for summary judgment. On November 5, 1990, the trial court, having been advised that the parties would stipulate to the facts and evidence and would readopt their respective memoranda of law and arguments previously filed on plaintiff's motion for summary judgment as their argument and law at trial, entered its final judgment order in favor of the Township. Jensen filed its notice of appeal on November 15, 1990.

■■ We first consider the Township's contention that Jensen does not have standing to challenge the contract between the Township and Waste Management. Specifically, the Township argues that Jensen does not have a sufficient property interest to challenge the validity of consideration or mutuality aspects of the contract. In support of its argument in this regard, the Township cites *Illinois Commerce Comm'n v. Central Illinois Public Service Co.* (1975), 25 Ill. App. 3d 79, 81, for the general proposition that "one who is not a party to a contract cannot complain that it is not mutual in character." In reply, Jensen argues that the issue of standing should be deemed waived on appeal in that the Township raised the issue for the first time in its appellate brief.

It is the general rule that a defense not raised in the trial court is regarded as waived and may not be raised for the first time in the reviewing court. (*Kravis v. Smith Marine, Inc.* (1975), 60 Ill. 2d 141, 147; *Jackson v. Chicago Board of Education* (1989), 192 Ill. App. 3d 1093, 1099.) Lack of standing in a civil case is an affirmative defense which, if not raised in a timely fashion in the trial court, is waived on appeal. (*Olivieri v. Coronet Insurance Co.* (1987), 173 Ill. App. 3d 867, 871, citing *Greer v. Illinois Housing Development Authority* (1988), 122 Ill. 2d 462, 508.) While this is the rule insofar as the appellant is concerned,

the appellee may defend the judgment on appeal, or urge any point in support of said judgment, even though not directly ruled on by the trial court, so long as the factual basis for the determination of such point was before the trial court. (*Kravis*, 60 Ill. 2d at 147; *Jackson*, 192 Ill. App. 3d at 1099.) Otherwise, the points argued on appeal are required to be commensurate with the issues presented at trial. *Kravis*, 60 Ill. 2d at 147.

Our review of the record clearly indicates that the sole theory of the Township's defense at trial was not that Jensen lacked standing to seek a declaratory judgment, but rather that its contract with Waste Management was valid. The pleadings relative to the declaratory judgment action do not even remotely suggest a defense theory based on lack of standing. As Jensen correctly points out, the only reference to this issue in the trial court was a parenthetic remark by the trial judge in ruling on Jensen's supplementary motion for summary judgment. The judge stated, "I'll address this issue on the merits as the parties have done. Although I do note the case of *Illinois Commerce Commission v. Central Illinois Public Service Company*, 322 N.E.2d 520 at page 522 (Fourth District 1975), which states that generally one not [a] party to a contract can't complain that it's not mutual in character." The Township did not raise or address the question of standing in its answer to Jensen's complaint for declaratory judgment or in response to Jensen's initial and supplementary motions for summary judgment. Indeed, the attorney for the Township stated at oral argument that "the Township chose to respond" to the issues on the merits "because of the climate at the time" and because it was the first township in the area to implement the provisions of the Act. Moreover, it cannot be said in the instant case that the Township, by raising the standing issue, is seeking to "defend the judgment on appeal" or "urge a point in support of" said judgment. (*Kravis*, 60 Ill. 2d at 147; *Jackson*, 192 Ill. App. 3d at 1099.) Rather, by attempting to address standing the Township is actually asking for a wholly different judgment than that rendered by the trial court. Under these circumstances, we conclude that the Township is precluded from raising this argument on appeal.

■ Next, we consider Jensen's contention that the trial court erred in finding that the Township was not barred from exercising the powers of the Act. Specifically, Jensen argues that since the Lake County Board, on September 12, 1989, passed a resolution "accepting and approving the Lake County Solid Waste Management Plan," the Township is not authorized to enter into contracts relating to garbage collection and disposal. In support of its argument in this regard, Jensen relies on the last provision of section 2 of the Act, which states that the Act

"does not apply in any township in which a county ordinance or resolution is in effect regulating the collection and disposal of refuse, garbage and ashes" (Ill. Rev. Stat. 1989, ch. 139, par. 332). The Township, on the other hand, argues that the Lake County solid waste management plan does not "regulate" the collection and disposal of refuse, garbage and ashes within the meaning of the Act and is therefore not a limitation on the power of the Township to adopt and implement the powers of the Act. The trial court, in ruling against Jensen on this issue, stated that the Lake County resolution and the solid waste management plan "propose and contemplate but do not establish regulations or put into effect procedures for the collection or disposal of refuse or for recycling." Rather, the court concluded that "the resolution is merely a plan that at some future date may be put into effect in part or in whole."

We agree with Jensen that the solid waste management plan, a 184-page document, thoroughly and extensively covers the issues, problems and methods of implementing a system of refuse collection and disposal. However, we believe that several key provisions in the plan, relied upon by Jensen in support of its argument that the resolution and plan together serve to "regulate" the collection and disposal of refuse, actually support the Township's argument and the court's conclusion to the contrary. For example, the plan, by its own terms, serves to provide "an outline of prioritized steps and actions that need to be taken to achieve" certain goals, and "functions as a formalized guideline" for establishing and implementing those goals. According to the plan, "[t]he first eight sections *** discuss *** and summarize key subjects, including current solid waste management systems, an assessment of future needs, solid waste management options, system configuration considerations, material and energy markets, environmental issues, and siting and permitting requirements." The three final sections "present the recommended plan of action to implement the Plan, a summary of the legislative framework for implementation, and a description of the major programs recommended to undertake a comprehensive management system." In addition, as noted by Jensen, the solid waste management plan proposes the use of an implementing agency as the actual operating entity under the plan. That agency is to be created by intergovernmental agreements between the county and the various municipalities within the county. According to the plan:

> "The Implementing Agency and the member units of government must be able to regulate the management and disposal of waste ***. The exercise of the regulatory control is referred to generally as 'flow control' and is usually implemented through adoption of ordinances and through control mechanisms, such as

permitting or licensing of haulers, that would be established by the member municipalities and the County."

Based on the foregoing, we conclude that the record fails to indicate that any of the above aspects or provisions of the plan, relied upon by Jensen in support of its argument, had actually been implemented at the time the Township established its waste and recycling regulations and entered into its agreement with Waste Management. Although the Lake County resolution which adopted the plan directs the county administrator to "initiate, in a timely manner, those actions necessary to begin implementation" of the plan, such actions have not yet taken place. Indeed, the parties stipulated to the fact that, as of the date of trial, no implementing regulations for the plan had been adopted or enacted. Clearly, additional steps need to be taken before it can be said that "a county ordinance or resolution is in effect regulating the collection and disposal of refuse, garbage and ashes" under the Act (Ill. Rev. Stat. 1989, ch. 139, par. 332). Thus, we cannot say that the trial court erred in denying Jensen's motion for summary judgment on this issue.

■ Jensen next contends that the trial court erred in finding that the contract between the Township and Waste Management was a valid exercise of the powers granted under the Act. Specifically, Jensen argues that the Act only authorizes contracts in which the Township, and not the individual citizen, makes the payments under the contract, said payments to be derived from taxation. The Township's argument, with which the trial court agreed, is that the Act requires an appropriation and tax only when there is money due and payable under a contract.

Both parties focus primarily on the language in section 5 of the Act (Ill. Rev. Stat. 1989, ch. 139, par. 335) in support of their respective arguments. The language in section 4 (Ill. Rev. Stat. 1989, ch. 139, par. 334), however, though barely mentioned by the parties, is equally important. Section 4 provides as follows:

> "The township board of trustees, when authorized by the electors of the unincorporated area of such township to exercise the powers conferred by this Act, may make contracts with any city, village, or incorporated town, or with any person, corporation, or county for more than one year and not exceeding 15 years (i) relating to the composting or recycling of garbage, refuse and ashes within the unincorporated area of the township or (ii) relating to the collection and final disposition, or relating solely to either the collection or final disposition of garbage, refuse and ashes within the unincorporated area of the township. For this purpose, the township board of trustees shall declare the unincorporated area of the township a special refuse collection and dis-

posal district for tax purposes, proof of which authorizes the county clerk to extend a tax upon the special refuse collection and disposal district ***." (Ill. Rev. Stat. 1989, ch. 139, par. 334.) Section 5 of the Act provides:

> "Whenever the township board of trustees makes a contract that is authorized by this Act, the township board of trustees shall include in the annual budget and appropriation ordinance for each fiscal year an appropriation of a sum of money to be derived from taxation extended upon the special refuse collection and disposal district sufficient to pay the amount which, by the terms of the contract, is to become due and payable." (Ill. Rev. Stat. 1989, ch. 139, par. 335.)

When the above two sections are read in conjunction, we believe the intent of the legislature is clearly discernible.

The Township's argument that the Act requires an appropriation and tax only when there is money due and payable under the contract misses the point. Such a conclusion might seem reasonable if we were to focus solely on the last phrase of section 5, to wit, the amount to be appropriated shall be "the amount which, by the terms of the contract, is to become due and payable." (Ill. Rev. Stat. 1989, ch. 139, par. 335.) However, the intent of the legislature in enacting a statute must be determined by examining the entire statute and by construing each material part of the legislation together. (*Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 318.) Courts should consider each part or section of a legislative act in connection with every other part or section, and not each part alone, in determining the purpose or intent of the legislature. (*Castaneda*, 132 Ill. 2d at 318; *Beiermann v. Edwards* (1990), 193 Ill. App. 3d 968, 979.) We must, whenever possible, attribute some reasonable meaning to every word, clause, or section of a statute. (*In re Marriage of Freeman* (1985), 106 Ill. 2d 290, 297.) Moreover, in construing a statute, each provision and word should be given a reasonable meaning, and the statute will not be presumed to contain surplusage within its provisions. *Bloese v. Board of Education of Community Unit School District No. 300* (1985), 138 Ill. App. 3d 460, 464.

With these guidelines in mind, we believe that the thrust of sections 4 and 5 of the Act is that townships, when entering into contracts for the collection and disposal of garbage, will declare special taxing districts for the express purpose of appropriating sums of money sufficient to pay for services rendered under the contract. The Township's interpretation to the contrary, derived by focusing on an isolated phrase within section 5, renders the remainder of section 5 and much of section 4 mere surplusage.

■ Therefore, we conclude that the Township's argument, and the trial court's conclusion, that the subject contract is valid and of a type of authorized under the Act is erroneous. Townships, like all other non-home-rule units, have no inherent powers, but only those granted to them by the Constitution or authorized by statute. (*Diversified Computer Services, Inc. v. Town of York* (1982), 104 Ill. App. 3d 852, 857.) Moreover, the language of sections 4 and 5 of the Act, relating to the establishment of special taxing districts, and the appropriation of funds to be derived therefrom, is mandatory and not permissive in nature. According to the Act, "the township *** *shall* declare *** a special refuse collection and disposal district for tax purposes ***" and "*shall* include in the annual budget and appropriation ordinance *** an appropriation of a sum of money to be derived from taxation extended upon the special refuse collection and disposal district." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 139, pars. 334, 335.) The Township in the instant case has failed to take these steps. Thus, we agree with Jensen that a contract, such as that in the instant case, which requires direct payment by the individual residents to the contractor, simply falls outside the powers granted to townships under the Act. It necessarily follows that the contract between the Township and Waste Management, as it was not authorized by, nor does it comply with, the provisions of the Act, is invalid.

Having so concluded, we need not address plaintiff's contentions regarding the sufficiency of contract consideration or mutuality of obligation. The trial court's determination that the Township was not barred, due to the existence of the Lake County Solid Waste Management Plan, from exercising the powers of the Act is affirmed. The trial court's determination that the contract between the Township and Waste Management was a valid exercise of the powers granted under the Act, however, is reversed, and the cause is remanded to the trial court with instructions to enter judgment in favor of Jensen.

Affirmed in part; reversed in part and remanded with directions.

DUNN and WOODWARD, JJ., concur.