JAMES T. HADDON, LTD., Plaintiff-Appellant, v. EDIE WEISS, Defendant-Appellee.—*In re* MARRIAGE OF EDIE WEISS, Petitioner, and MARC R. WEISS, Respondent (James T. Haddon, Ltd., Plaintiff-Appellant, v. Edie Weiss, Defendant-Appellee).

First District (5th Division)   Nos. 1—01—0608, 1—02—0081 cons.

Opinion filed June 6, 2003.—Rehearing denied August 26, 2003.

Albert Koretzky, of Chicago, for appellant.

Matthew M. Litvak, of Chicago, for appellee.

JUSTICE REID delivered the opinion of the court:

This is a consolidated matter consisting of an action in debt filed in the first municipal district of the circuit court of Cook County and citation proceedings based on a claim for attorney fees flowing from a 1991 dissolution of marriage decree. Approximately eight years following the entry of the judgment of dissolution of marriage, the law firm commenced these two proceedings to collect the balance of a debt allegedly owed for its professional services. The trial court in the action-in-debt case *sua sponte* struck plaintiff-appellant's complaint without ruling on defendant-appellee's motion to dismiss. The trial court in the citation-to-discover-assets case granted defendant-appellee's motion to quash the two citations to discover assets. For the reasons that follow, both matters are reversed and remanded.

## BACKGROUND

James T. Haddon, Ltd. (Haddon), a corporation consisting of James T. Haddon as its principal who is licensed to practice law in the State of Illinois, filed supplementary proceedings for garnishment and a citation to discover assets against Edie Weiss, a former client. A divorce was granted in 1991. It appears as though no action was taken between 1992 and 2000 when supplementary proceedings were commenced. The supplementary proceedings, consisting of citations to discover assets, were based upon a recital in the divorce decree wherein Weiss promised to pay Haddon $15,201.66 for legal services. In the intervening years following the divorce, Weiss paid $1,560. The last payment was made on or about January 10, 1992. Once the supplementary proceedings were commenced, Weiss filed a motion to quash the citations, claiming that the judgment of dissolution of marriage was not a judgment in favor of Haddon and against Weiss. Weiss based this position on the fact that Haddon was not a party to the dissolution proceedings and no judgment was entered in its favor. Weiss also reasoned that, owing to the passage of more than seven years since

the entry of the dissolution, it could not be enforced. The trial court granted the motion to quash and denied a motion to vacate when Haddon filed its notice of appeal. As for the action-in-debt proceedings, the trial court *sua sponte* struck the case from the court's call without ruling on the substance of Weiss's pending motion to dismiss.

In appeal number 1—01—0608, Haddon argues that the trial court erred in striking the debt case from the call. Haddon's argument hinges on the premise that the complaint stated a cause of action for a debt due from Weiss to it. As authority, Haddon cites section 508(a) of the Illinois Marriage and Dissolution of Marriage Act. 750 ILCS 5/508(a) (West 1994)[1]. Section 508(a) authorizes the trial court to order attorney fees as follows:

> "The court from time to time, after due notice and hearing, and after considering the financial resources of the parties, may order any party to pay a reasonable amount for his own costs and attorney's fees and for the costs and attorney's fees necessarily incurred ***." 750 ILCS 5/508(a) (West 1994).

In appeal number 1—02—0081, Haddon argues that the trial court erred in quashing its citation proceedings. Haddon claims that the trial court retains jurisdiction to enforce its domestic relations orders. Haddon also argues that, because the citation sufficiently describes the original judgment, it acts to revive the original judgment.

Weiss responds that nowhere in the judgment order or the marital settlement agreement is there a finding in favor of Haddon and against Weiss for a sum of money. She argues that a recital of a promise to pay one's attorney, contained in a marital settlement agreement, does not translate into an enforceable judgment absent an adjudication and finding by the trial court. She argues that only the decretal portion of a trial court's order will suffice. Weiss also argues that Haddon's actions of initiating supplementary proceedings did not act so as to revive the dissolution judgment. She argues that the language in the divorce decree retaining the trial court's jurisdiction was limited to issues of child support, maintenance and property distribution. Weiss contends that the judge in the first municipal district lacked the scope of jurisdiction that the judge who dissolved the marriage had. Weiss also argues for affirmance because there never was a section 508 hearing at the end of which the trial court declared Haddon's rights against Weiss. Finally, Weiss argues that any judgment Haddon might have possessed became stale with the passage of time. Weiss argues that the only thing that could conceivably survive the seven-year stale-judgment rule involves child support and maintenance.

---

[1]At the time of the dissolution of marriage, this statute was codified as "Ill. Rev. Stat. 1991, ch. 40, par. 508(a)."

In reply, Haddon argues that the express language of the dissolution of marriage decree gives the trial court continuing jurisdiction to enforce its terms and the terms of the marital settlement agreement. Additionally, Haddon argues that the judgment for dissolution of marriage properly adjudicated its rights to collect its attorney fees.

## ANALYSIS

■ Section 508(a) of the Illinois Marriage and Dissolution of Marriage Act authorizes a trial court, upon appropriate circumstances and after notice and a hearing, to order a party to pay reasonable attorney fees. 750 ILCS 5/508(a) (West 1994). No section 508 hearing was conducted by the trial court. The Illinois Supreme Court has indicated that a client may waive the right to a section 508 hearing provided that client acts deliberately and understanding the rights being waived. *In re Marriage of Pagano*, 154 Ill. 2d 174, 184 (1992).

Section 508, like all legislative enactments, "should be read as a whole with all relevant parts considered, and they should be construed, if possible, so that no term is rendered superfluous or meaningless." *In re Marriage of Kates*, 198 Ill. 2d 156, 163 (2001). "The primary purpose of section 508 is to give the court the authority in a dissolution proceeding to equalize the relative positions of the parties before it, 'diminishing any advantage one spouse may have over the other in the presentation of a case due to a disparity in their respective financial resources.' [Citation.]" *Pagano*, 154 Ill. 2d at 183. While the Illinois Supreme Court, in *Pagano*, identified that as the primary purpose, it is not the only purpose, hence the need for reading statutes in their entirety. "The language of [section 508] does more, however, as it also gives the court hearing the dissolution claim the discretion of ordering attorney fees against a lawyer's own client." *Pagano*, 154 Ill. 2d at 183. Specifically, section 508(c) reads:

> "The court may order that the award of attorney's fees and costs hereunder shall be paid directly to the attorney, *who may enforce such order in his name*, or that they be paid to the relevant party. Judgment may be entered and enforcement thereof had accordingly." (Emphasis added.) 750 ILCS 5/508(c) (West 1994).

■ It is clear that by application of the plain language of section 508(c), if there exists a valid order in a dissolution of marriage case charging a party with the obligation to pay her attorney, the attorney may enforce it in his own name. We must necessarily now turn to an examination of whether Haddon has a valid, enforceable order and whether the right to a hearing has been waived. We believe that it does have an enforceable order that does not, under the facts and circumstances of this case, require a hearing. "It is an elementary principle of law that a court is vested with the inherent power to

enforce its orders." *Smithberg v. Illinois Municipal Retirement Fund*, 192 Ill. 2d 291, 297 (2000), citing *In re Baker*, 71 Ill. 2d 480, 484 (1978). "Where a domestic relations order has been entered, the trial court retains jurisdiction to enforce its order (*In re Marriage of Hartman*, 305 Ill. App. 3d 338, 343 (1999)), as further performance by the parties is often contemplated (*In re Marriage of Adamson*, 308 Ill. App. 3d 759, 764 (1999))." *Smithberg*, 192 Ill. 2d at 297-98. Though this case is factually distinct from *Smithberg*, owing to the specific mention of Haddon in the marital settlement agreement, we believe the principle still applies. The Weiss judgment of dissolution of marriage incorporates by reference the marital settlement agreement. The trial court, in the judgment of dissolution, indicated that the marital settlement agreement "was entered into freely and voluntarily between the parties." The trial court found, as a matter of law, that "the marital settlement agreement is not unconscionable and ought to receive the approval of [the trial] court and that the marital settlement agreement is *** made a part of [the] judgment for dissolution of marriage." The marital settlement agreement contains specific language identifying the party sought to be charged, in this instance Weiss, and the sum certain. The document was initialed by both Edie and Marc Weiss. As such, the aspect of the judgment order referring to the marital settlement agreement became final and enforceable along with the rest of it. Additionally, Weiss made partial payment of the sum identified in the marital settlement agreement. For reasons not chronicled in the record, Weiss paid a portion of the attorney fees then stopped making payments.

We next address Haddon's delay in enforcing its rights. At the time Haddon initiated its supplemental proceedings, approximately eight years had passed since the entry of the judgment of dissolution. This is beyond the applicable time period found in the limitation-on-enforcement section of the Code of Civil Procedure. That section reads as follows:

> "Except as herein provided, no judgment shall be enforced after the expiration of 7 years from the time the same is rendered, except upon the revival of the same by a proceeding provided by Section 2—1601 of this Act ***." 735 ILCS 5/12—108 (West 2000)

Section 2—1601 of the Code of Civil Procedure formally abolished the common law doctrine of *scire facias* and the legislature codified it. An action to revive a judgment, formerly brought under a writ of *scire facias*, is now brought pursuant to section 13—218 of the Code of Civil Procedure. 735 ILCS 5/13—218 (West 2000). That section provides for the revival of a judgment so long as such proceedings are commenced within 20 years from the date of the entry of the underlying judgment,

in this case the judgment for dissolution of marriage. See *First National Bank in Toledo v. Adkins*, 272 Ill. App. 3d 111 (1995). In its reply brief, Haddon cites *Department of Public Aid ex rel. McGinnis v. McGinnis*, 268 Ill. App. 3d 123, 130 (1994), citing *People ex rel. Wray v. Brassard*, 226 Ill. App. 3d 1007, 1011 (1992), for the proposition that an express request for revival is not necessary to effect revival of a judgment. We agree. "[E]ven under the requirements for the now-abolished writ of *scire facias*, all that was required to effect revival was 'a creditor must describe the original judgment by date and amount and state whether or not it has been partially satisfied.' " *McGinnis*, 268 Ill. App. 3d at 130, quoting *A.A. Store Fixture Co. v. Kouzoukas*, 87 Ill. App. 3d 631, 636 (1980).

■ Based upon the existence of the marital settlement agreement containing express language indicating that Haddon was owed its fees and that partial payment thereof had in fact been made, Haddon's subsequent actions to collect the debt operate as a revival under these facts and circumstances. Haddon filed a certificate of mailing certifying that Weiss was served with a copy of the citation to discover assets directed to the North Community Bank. She was also served with a copy of the certificate of mailing that certified that Weiss received a copy of the citation to discover assets directed to the sheriff of Cook County. Because Haddon's initial petition gave Weiss adequate notice of an attempted revival of a debt, she cannot reasonably deny knowledge of its existence. This, coupled with Weiss's history of partial payment, Haddon had every right to pursue its debt by any means available.

## CONCLUSION

In light of the foregoing, the judgments of the trial court in both the appeals numbered 1—01—0608 and 1—02—0081 are reversed. Both causes are hereby remanded for further proceedings consistent with this opinion.

Judgments reversed and remanded.

CAMPBELL, P.J., and HARTIGAN, J., concur.